# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| MIKE DONOVAN, *et. al.*, | : | |
| | : | |
| Plaintiff(s), | : | |
| | : | |
| v. | : | **CASE NO.: 21-20499-CIV-ALTONAGA** |
| | : | |
| Officers Fernandez Rivadeneira, | : | |
| *et. al*, | : | |
| | : | |
| Defendant(s). | : | |
| _____ | : | |

## MOTION TO DISMISS

Defendants Fernando Rivadeneira, Bridget Sanchez, and Leonard Fernandez move to dismiss the Amended Complaint [ECF No. 12] (hereinafter "*Am. Compl.*") under Fed. R. Civ. P. 12(b)(1), 12(b)(4), 12(b)(5), and 12(b)(6).

## INTRODUCTION

On January 28, 2021, a group of protesters and a film crew staged a protest in front of a single-family residence in Miami-Dade County. In response to a 911 call from the residence, Miami-Dade Police Officer Fernando Rivadeneira responded to the scene. There, he witnessed the protesters assembled in front the residence and chanting loudly on megaphones. Officer Rivadeneira lawfully dispersed the residential protest.

Eight of the individuals allegedly involved in the protest that day filed this lawsuit seeking only declaratory relief against Officer Rivadeneira and two other Miami-Dade County police officers, Officer Bridget Sanchez and Sergeant Leonard Fernandez, in both their individual and official capacities. The video exhibits attached to the Amended Complaint and incorporated by reference show that Plaintiffs' constitutional rights were not violated in connection with the protest. But, more fundamentally, Plaintiffs have not presented a live controversy that properly invokes the Court's jurisdiction to grant declaratory relief. Plaintiffs also improperly sued Defendants in their official capacities, which is the equivalent of suing their employer, Miami-Dade County, without following either the procedural or substantive requirements for suing a Florida municipality. For these reasons, and those set forth below, the Amended Complaint should be dismissed.

**1**

## FACTUAL AND PROCEDURAL BACKGROUND

***Plaintiffs Target a Single-Family Residence in Protest Using Megaphones Until Dispersed by Officer Rivadeneira***

On January 28, 2021, Plaintiffs gathered to protest in front of the "known address" of Henry "Enrique" Tarrio in Miami-Dade County. *Am. Compl.* ¶¶ 12, 15-16.  Plaintiffs allege Tarrio is the chairman of the Proud Boys, a "far-right, neofacist[]" group. *Id* ¶ 12.  Plaintiffs stood in the street at the foot of the driveway with sound amplification devices chanting "hey, hey, ho, ho racism has got to go," while being filmed by a camera crew.[1]  *Ex. A to Am. Compl.,* Video of Police Dispersing Protest at 0:01-0:31.[2]  At least five protestors amplified these shouts with megaphones. *Id.* at 0:32-035.

---

[1]  Although Plaintiffs' video exhibits depict a camera crew on site to film the protest, Plaintiffs have elected to only file snippets of what appear to be cell phone videos.  Even these clips, however, belie the factual allegations in the Amended Complaint.

[2] The Amended Complaint's video exhibits are incorporated by reference because the videos are attached to the Amended Complaint; furthermore, they are central to Plaintiffs' allegations and their authenticity is undisputed.  *See Am. Compl.* ¶¶ 22, 29, 34, 35, 37, 41, 48, 52, 55, 58 & *Exhibits A-E* (ECF No. 12-4, 12-5, 12-6, 12-7, 12-8); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources[,] . . . in particular, documents incorporated into the complaint by reference"); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement"); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

When documents or videos incorporated by reference contradict the complaint's allegations, the normal rule requiring a complaint's allegations to be accepted as true does not apply.  *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("In considering a motion to dismiss . . . district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim. . . . When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."); *Davis v. Clayton*, No. 7:17-CV-02076-LSC, 2018 WL 3475438 (N.D. Ala. July 19, 2018); *Steen v. City of Pensacola*, 809 F. Supp. 2d 1342, 1344 & n. 2 (N.D. Fla. 2011); *CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598-CIV, 2006 WL 3499113, at *3 (S.D. Fla. Dec. 4, 2006) (Huck, J.) ("While normally on a motion to dismiss the Court must accept the facts alleged in a complaint as true, if an allegation in the complaint is contradicted by a document incorporated by reference therein and which reveals facts foreclosing recovery as a matter of law, dismissal is appropriate." (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).  In accordance with the Court's prior Order [ECF No. 5], the Court should order Plaintiffs to conventionally file the incorporated videos, unless the Court finds dismissal is warranted even without reference to the video footage.

In response to the protestors' loud chants, a resident of the targeted home emerged. *See id.* A protestor yelled into the megaphone, "a racist Proud Boy named Henry lives in your neighborhood!" *Id.* at 0:46-0:52. The woman identified herself as Tarrio's sister and asked to speak with the group. *See id.* The protestors again responded loudly, chanting "Henry is a racist, Henry is a snitch" though their megaphones. *Id.* at 0:59-1:08. Tarrio's sister told Plaintiffs that only she and her mother, not Tarrio, lived at the residence, and informed Plaintiffs she had called the cops but did not want any problems. *See id.* at 1:10-1:23. One of the Plaintiffs asked "do you want to give us his address?" When the resident refused, a Plaintiff responded "ok, then we'll stay here, thank you, goodbye." *Id.* 1:23-1:48. Plaintiffs resumed yelling on their megaphones "Henry is a racist, Henry is a snitch." *Id.* at 1:27-1:48. Plaintiffs' loud shouting caused several of the residents of the surrounding homes to come outside. *Id.* at 1:45, 3:05-3:08

Officer Rivadeneira arrived at the scene in his police car, momentarily sounding his siren. *See id.* at 1:16-1:19. Upon exiting his car, he asked twice if Plaintiffs had a permit. *See id.* 1:47-1:53. One protestor responded no and stated no permit was necessary, *see Am. Compl.* ¶ 22, to which Officer Rivadeneira replied, "You need to leave. You need to leave, or everyone will be under arrest . . . if you don't have a permit, you will be under arrest for causing a scene." *Ex. A* at 1:53-2:04. Plaintiffs briefly argued back, but Officer Rivadeneira insisted "it's time to leave." *Id.* at 2:05-2:45. Plaintiffs stated to Officer Rivadeneira and the resident multiple times that they would be back. *Id.* Plaintiffs returned to their vehicles and left. *See id.* at 2:55-3:08. Officer Sanchez was on the scene but did not give commands or assist in dispersing the protest. *See id.* at 1:47-3:08; *but see Am. Compl.* ¶ 23 (alleging that Officer Sanchez assisted dispersal of protestors).

### *Officer Rivadeneira Runs Plaintiffs' License Plate Numbers at the Wendy's Parking Lot*

Plaintiffs left the residence and reassembled in a nearby Wendy's parking lot. *See Am. Compl.* ¶ 28. When Officer Rivadeneira arrived at the Wendy's lot, Plaintiffs had already exited their vehicles and were gathered in the parking lot on foot. *Ex B. to Am. Compl.*, Video of Police Arriving at Wendy's at 0:01-0:35. The drivers' seats of Plaintiffs' cars were empty and the vehicles unoccupied. *See id.* 0:36-1:00. Officer Rivadeneira, driving through the lot, briefly paused in front of Plaintiffs' parked cars. *See id.* at 0:01-0:35. He drove away less than two minutes later, after he had stepped out of his vehicle to call in the license plate numbers. *See id.* at 1:00-2:05. During this brief two-minute period, none of the Plaintiffs requested Officer Rivadeneira to move his vehicle so they could leave, and no words were exchanged between

3

Plaintiffs and Officer Rivadeneira. *Id.* Rather, during this time, several Plaintiffs walked away towards the Wendy's and Officer Rivadeneira made no effort to stop them. *See id.*

At some point later, Officer Rivadeneira drove to another part of the parking lot and briefly stopped behind a stationary black Nissan. *See Ex. C to Am. Compl.*, Video of Officer Blocking Nissan. 0:09-0:11. Officer Rivadeneira was positioned behind the Nissan for approximately 14 seconds. *Id.* 0:14-0:28. At this point, some of the protestors left the Wendy's in a black Uber, without any interference from Officer Rivadeneira—who did not prevent the Uber from leaving and did not follow it once it left. *See Ex. D. to Am. Compl.*, Video of Uber at 0:01-0:20. Two additional police vehicles arrived in the parking lot, distanced from where the remaining Plaintiffs were gathered. *See Ex. E. to Am. Compl*, Video of Officers Circling at 0:01-0:38. During the entire encounter, no officer activated their sirens or told Plaintiffs not to leave. *See id.*; *see also Exs. C & D.*

### The Amended Complaint

On May 5, 2021, eight Plaintiffs filed an Amended Complaint seeking declaratory relief against Officer Fernando Rivadeneira, Officer Bridget Sanchez, and Sergeant Leonard Fernandez. *See generally Am. Compl.* Plaintiffs alleged that on January 28, 2021, they went to Tarrio's last known address, where they "chant[ed] protests." *Am. Compl.* ¶¶ 12, 15. Plaintiffs alleged they were "not blocking traffic and had sidewalks available for their use." *See id.* ¶ 21. Plaintiffs claimed Officer Rivadeneira, assisted by Officer Sanchez, dispersed the protest by advising Plaintiffs they would be under arrest if they did not leave. *See id.* ¶¶ 22-23. Plaintiffs then left the scene and drove to a nearby Wendy's located in a shopping complex. *See id.* ¶ 28.

Plaintiffs alleged Officer Fernando Rivadeneira, Officer Bridget Sanchez, and Sergeant Leonard Fernandez harassed and intimated them at the Wendy's parking lot by blocking in their vehicles, preventing them from leaving the scene, and running their tag numbers. *See id.* ¶¶ 29-34. Plaintiffs note Officer Rivadeneira began calling in license plate numbers, while the other police vehicles drove around the shopping complex's parking lot. *See id.* ¶ 32. Then, as several younger passengers boarded an Uber and left, Plaintiffs claim Officer Rivadeneira pulled up behind the Uber, used his body camera to record their exit, and "follow[ed] the Uber as it left[.]" *Id.* ¶¶ 35-36. Plaintiffs alleged all three officers then circled the parking lot where Plaintiffs were located for 90 minutes. *See id.* ¶¶ 36-37.

The Amended Complaints bring three counts for declaratory relief. Count I, asserted

against Officers Rivadeneira and Sanchez, is entitled "Declaratory Relief for Violation of Plaintiffs' First Amendment Rights to Free Speech" and alleges Plaintiffs are entitled to a declaration stating "they have [sic] right to resume and continue their lawful protest of the racist Tarrio." *Am. Compl.* ¶ 54. Count II, asserted against all Defendants, is entitled "Declaratory Relief for Retaliation Against Plaintiffs' Exercise of their First Amendment Right to Free Speech" and alleges Plaintiffs are entitled to a declaration stating "they have [sic] right to resume and continue their lawful protest of the racist Tarrio and that any further attempts by Defendants, or any Miami-Dade Police Officer, to chill that speech [sic] violate Plaintiffs' First amendment rights." *Id* ¶ 57. And Count III, asserted against all Defendants, is entitled "Declaratory Relief for Violation of Plaintiffs' Fourth Amendment Rights to be Free from Unreasonable Search and Seizure" and alleges Plaintiffs are entitled to a declaration stating "that continued seizures of their persons by blocking their vehicles in and preventing the Protesters from leaving any area without probable cause is a violation of their Fourth Amendment rights . . ." *Am. Compl.* ¶ 60. Defendants now move to dismiss the Amended Complaint.

## SUMMARY OF THE ARGUMENT

Plaintiffs fail to invoke the Court's jurisdiction under Article III of the U.S. Constitution. First, Plaintiffs' allegations, duly incorporating the videos attached to the Amended Complaint, do not show Plaintiffs' First or Fourth Amendment rights were violated. Officer Rivadeneira lawfully dispersed the protest because he had probable cause Plaintiffs were violating Miami-Dade County's Noise Ordinance and assembling unlawfully due to Plaintiffs' use of megaphones and excessive shouting during the residential protest. Plaintiffs' allegations also fail to show retaliation while Plaintiffs were gathered at the Wendy's parking lot. Defendants' acts as depicted in the videos—temporarily blocking several stationary, unoccupied vehicles and running Plaintiffs' license plates—are not retaliatory as a matter of law because they are too *de minimus* to chill Plaintiffs' future speech. Nor did Defendants' conduct in the Wendy's lot constitute an unlawful seizure—or *any* seizure for that matter—under the Fourth Amendment. Without a clear violation of Plaintiffs' constitutional rights, the Court should dismiss the Amendment Complaint because there is no basis to conclude Plaintiffs' rights will be violated in the future should they return to protest, thus making declaratory relief improper.

Second, even if a past violation of Plaintiffs' rights occurred, it is insufficient to invoke the Court's jurisdiction to grant declaratory relief because Plaintiffs fail to allege that a future injury

is likely to occur.  Plaintiffs do not allege any details regarding when and how future protests will occur, who will attend, in what manner the protest will proceed, or how Defendants are likely to respond.  Absent these details plausibly alleging future injury, the Court is precluded from granting declaratory relief under *Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006).

Third, Plaintiffs do not allege how the relief sought would redress an imminent injury. Rather, the declaratory relief Plaintiffs seek is in fact unlikely to provide any guidance on how Defendants should respond going forward, given the unusual and unique circumstances of the residential protest.  The relief sought is not directed at any County policy; Plaintiffs request is for the Court to declare that they have a right to resume their protest and that any further attempts to child Plaintiffs' or block their vehicles is a violation of the First and Fourth Amendments.  *See generally Am. Compl.* ¶¶ 54, 57, 60.  The amorphous declarations Plaintiffs request do not comport with the specificity required by *Elend*.  For these reasons, Plaintiffs fail to establish standing and the Court lacks the jurisdiction to issue declaratory relief.

Finally, Plaintiffs improperly sued Defendants in their official capacities.  As the entity employing Defendants, Miami-Dade County is the actual party in interest to Plaintiffs' official capacity claims.  Plaintiffs' failure to name and deliver service of process on the County demands dismissal under Rules 12(b)(4) and 12(b)(5).  And even if Plaintiffs had properly initiated an action against the County, the official capacity claims still fail because Plaintiffs do not allege their rights were violated because of a municipal policy in accordance with *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Therefore, Plaintiffs' official capacity claims should also be dismissed.

## MEMORANDUM OF LAW

## I.     PLAINTIFFS LACK ARTICLE III STANDING AND DO NOT STATE A CLAIM FOR DECLARATORY RELIEF

Because a federal court has no subject-matter jurisdiction over a claim when a plaintiff has no standing, standing is a threshold question in every federal suit.  *See Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1220 (11th Cir. 2017).  "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."  *Allen v. Wright*, 468 U.S. 737, 752 (1984) (abrogated on other grounds).

The plaintiff bears the burden of pleading three elements to establish Article III standing:

(1) injury in fact, (2) causation between the injury and the defendants' conduct, and (3) redressability.  First, there must "an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, ***and*** (b) 'actual or imminent, not conjectural or hypothetical.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up) (emphasis added).  "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Id.* (cleaned up).  "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision."  *Id.* at 561 (cleaned up).

Below, Part I.A. will explain how Plaintiffs' video exhibits demonstrate Plaintiffs' constitutional rights were *not* violated.  Consequently, Plaintiffs have not stated a claim for relief and there is no basis to conclude their rights will be violated should they return to protest.  Part I.B. further explains that regardless of whether Plaintiffs' rights were violated on January 28, 2021, Plaintiffs lack standing for declaratory relief because no imminent harm is alleged, and the requested relief will not redress any alleged future harm.

### A.  Plaintiffs' Video Exhibits, Attached to the Amended Complaint, Show Plaintiffs' Constitutional Rights Were Not Violated

#### i.  *Officer Rivadeneira Lawfully Dispersed Plaintiffs' Focused Picket of a Residential Dwelling* (Count I)

Count I alleges Plaintiffs' First Amendment rights were violated because Officer Rivadeneira and Officer Sanchez disbursed their protest.[3]

Although streets and sidewalks are traditional public fora, a protest targeting a particular residence—often referred to as "focused picketing"—can be curtailed without violating the First Amendment because the government's interest in "protecting the well-being, tranquility, and privacy of the home is [] of the highest order in a free and civilized society."  *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) (quoting *Carey v. Brown*, 447 U.S. 455, 471 (1980)).  When faced with focused picketing, the targeted residents' constitutional right to privacy outweighs the protesters' interest in targeting unwilling residential listeners:

One important aspect of residential privacy is protection of the unwilling listener.

---

[3] The video exhibits show Officer Sanchez did *not* participate in dispersing the protest: the protesters leave the scene without any intervention from Officer Sanchez.  *See Ex. A*.  Sergeant Fernandez is not a party to Count I.  *See Am. Compl.* at 10.

> Although in many locations, we expect individuals simply to avoid speech they do not want to hear, the home is different. "That we are often 'captives' outside the sanctuary of the home and subject to objectionable speech . . . does not mean we must be captives everywhere." Instead, a special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions. ***Thus, we have repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom***.

*Frisby*, 487 U.S. at 484–85 (emphasis added; cleaned up).  When focused picketing occurs, the "resident is figuratively, and perhaps literally, trapped within the home, and because of the unique and subtle impact of such picketing is left with no ready means of avoiding the unwanted speech." *Id.* at 487.

State action prohibiting protests targeted at a particular residence overcomes strict scrutiny under the First Amendment.  The state has a compelling interest to protect residential privacy because of the unique nature of the home in our constitutional heritage.  *See Frisby*, 487 U.S. at 485; *cf. Moore v. Pederson*, 806 F.3d 1036, 1043 (11th Cir. 2015) ("Stemming from the origins of our nation, the home has always been viewed as a sacrosanct place with ***unique rules*** that apply to it.") (emphasis added).  And the narrow tailoring requirement is satisfied by applying this unique restriction to focused ***residential*** protests—leaving the protesters with ample alternative venues and channels to express their message.  *See Frisby*, 487 U.S. at 485-87.

Officer Rivadeneira's dispersal of Plaintiffs' targeted protest did not violate the First Amendment under *Frisby*.  The Amended Complaint admits the protest targeted Tarrio's home, and the video exhibits confirm Plaintiffs shouted amplified messages about Tarrio at the residence.  *See Am. Compl.* ¶¶ 15-16; *Ex. A*.  The residents of the targeted home, clearly disturbed and agitated in the video footage, called 911 to protect their constitutional right to privacy and freedom from unwanted speech in Plaintiffs' focused picket of their home.  Under *Frisby*, Officer Rivadeneira's dispersal of the protest was lawful.

Moreover, Officer Rivadeneira was empowered by local ordinance and state law to disperse the protest.  Miami-Dade County's Noise Ordinance makes it "unlawful for any person to make, continue, or cause to be made or continued any unreasonably loud, excessive, unnecessary or unusual noise."  Miami-Dade County Code of Ordinances ("MDC Code") § 21-28 ("Noise Ordinance).  The Noise Ordinance provides enhanced protection to residential areas by prohibiting "[a]ny unreasonably loud, boisterous or raucous shouting in ***any residential area***[.]"

8

*Id.* § 21-28 ¶ (l) (emphasis added). Violation of the Noise Ordinance is a criminal offense carrying a fine of up to $500.00 or a jail sentence of up to 60 days. *See id.* § 21-28.

If that were not enough, state law also authorized Officer Rivadeneira to disperse the protest. The Florida legislature extends to municipalities the general power to "quell . . . any disturbance or disorder which threatens to peace and good order of society." *Freeman v. Town of Eatonville, Fla.*, 225 F. App'x 775, 778 (11th Cir. 2006) (quoting Fla. Stat. § 14.022); *see also* Fla. Stat. § 166.021. "Florida law [] compels law enforcement officers to disperse 'immediately and peaceably' crowds which are 'unlawfully, riotously, or tumultuously assembled.'" *Freeman*, 225 F. App'x 778 (quoting Fla. Stat. § 870.04). An unlawful assembly exists when three or more people gather to commit a breach of the peace or "any other unlawful act." Fla. Stat. § 870.02.

Officer Rivadeneira had probable cause to believe Plaintiffs violated the Noise Ordinance and were unlawfully assembled. Probable cause exists "when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995)). Probable cause requires "only a probability" of criminal activity, "not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245 n. 13, (1983). It "must be judged . . . with a common sense view to the realities of normal life," *Wilson v. Attaway*, 757 F.2d 1227, 1235 (11th Cir. 1985), and "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972).

Upon witnessing Plaintiffs using megaphones to amplify their shouts, Officer Rivadeneira had information which would cause a reasonably prudent person to believe Plaintiffs were violating the Noise Ordinance. Although Plaintiffs claim to have obeyed all laws during their protest, *see Am. Compl.* ¶ 21, Plaintiffs' use of megaphones to amplify their already voluminous cries created the "unreasonably loud, boisterous or raucous shouting" prohibited by the Noise Ordinance in residential areas. MDC Code § 21-28 ¶ (l). Because at least five protestors held megaphones and several more were yelling loudly, Officer Rivadeneira also had probable cause to believe three or more people had gathered to violate the Noise Ordinance, an unlawful act, thereby creating an unlawful assembly under Fla. Stat. § 870.02, which he was authorized to disperse under Fla. Stat. § 870.04. Because probable cause existed to believe Plaintiffs' gathering

OFFICE OF THE COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE (305) 375-5151

was illegal under the Noise Ordinance and state law, Officer Rivadeneira's order to disperse under threat of arrest was lawful.

Numerous courts have found the application of similar noise ordinances constitute reasonable time, place and manner restrictions compliant with the First Amendment. *E.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 44-47 (2d Cir. 2011) (issuance of written warning to preacher for violating local noise ordinance did not violate First Amendment); *Adams v. City of New York*, 226 F. Supp. 3d 261, 270-71 (S.D.N.Y. 2016) (arrest of protestor for violating ordinance prohibiting "unreasonable noises" did not violate First Amendment); *Commonwealth v. Parente*, 956 A.2d 1065 (Pa. 2008) (upholding conviction under First Amendment challenge to noise ordinance); *City of Beauford v. Baker*, 315 S.C. 146 (S.C 1993) (same); *Eanes v. State*, 318 Md. 436 (Md. 1990) (same).  Like the ordinances in these cases, the Noise Ordinance, and in particular its provision prohibiting loud noises or raucous shouting in residential streets, is content neutral and serves the compelling purpose of preserving the peace of quiet of residential neighborhoods and protecting the sanctity of the home.  *See also DA Mortg. Inc., v City of Miami Beach*, 486 F.3d 1254 (11th Cir. 2007) (rejecting constitutional challenge to the Noise Ordinance).  And it is narrowly tailored because it leaves ample alterative channels to engage in protected expression: the Noise Ordinance does not prohibit *all* protests in residential neighborhoods (only those which are too loud), nor does it prevent protestors from using signs or other visual aids to disseminate their message.  The specific prohibition here limits its sweep to *residential* areas, which enjoy enhanced protection from unwanted speech under *Frisby*.

The Amended Complaint and video exhibits show Officer Rivadeneira told Plaintiffs to disperse for causing a scene and failing to have a permit.  But a threat of arrest supported by probable cause cannot be deemed unlawful simply because an officer fails to cite the precise statute or legal theory justifying his actions, so long as the officer's underlying conduct is supported by probable cause.  *See Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002) ("The fact that [an officer] did not cite the specific Miami–Dade County noise ordinance either orally or in his arrest report is irrelevant . . . the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest."); *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973); *Jernigan v. State,* 566 So.2d 39, 40 (Fla. 1st DCA 1990); *Blanding v. State,* 446 So.2d 1135 (Fla. 3d DCA 1984).  This concept is especially apropos when a party is seeking declaratory relief and the Court must conduct a prospective analysis—should Plaintiffs resume their targeted protest in the same

excessively loud manner, a Miami-Dade police officer would again have probable cause to arrest or disperse them under the Noise Ordinance.

As a matter of law, Plaintiffs cannot assert a First Amendment claim because Officer Rivadeneira had probable cause to believe Plaintiffs were violating the law. *See Redd v. City of Enter.*, 140 F.3d 1378, 1383 (11th Cir. 1998) ("When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested."); *accord Sada v. City of Altamonte Springs*, 434 F. App'x 845, 851 (11th Cir. 2011) (probable cause defeats First and Fourth Amendment claims). Absent a violation of Plaintiffs' constitutional rights, Plaintiffs fail to demonstrate standing for declaratory relief.

### ii. *Plaintiffs Fail to Allege Retaliatory Conduct under the First Amendment* (Count II)

To establish a *prima facie* claim for First Amendment retaliation, a plaintiff must allege that she "suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in [protected] speech[.]" *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011); *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). The officer's conduct must result in a "chilling" or "silencing" effect on a person's "future First Amendment activities." *Id.* at 1251 (quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1399 (9th Cir. 1999)). The inquiry is objective, and "government officials should not be liable when the plaintiff is unreasonably weak-willed or suffers only a '*de minimis* inconvenience to her exercise of First Amendment rights.'" *Id.* at 1252 (quoting *Constantine*, 411 F.3d at 500). Thus, inappropriate or even unprofessional conduct from police officers does not automatically constitute adverse conduct sufficient to establish a First Amendment retaliation claim. *See Carroll v. Pfeffer*, 262 F.3d 847, 849-50 (8th Cir. 2001).

Plaintiffs' video exhibits belie their conclusory assertions that Defendants "began to harass and intimidate" them and prevented them from leaving the parking lot. *See Am. Compl.* ¶¶ 29, 31. The videos show Plaintiffs moving freely in the parking lot, outside their vehicles, without being blocked or restricted by the officers. They show Officer Rivadeneira blocked three ***unoccupied*** vehicles for less than two minutes while he called in their license plate numbers and later paused behind the ***parked*** black Nissan for approximately 14 seconds. *See Exhibits B-E.* These are the very types of *de minimis* actions that cause no actual inconvenience and do not rise to the level of

adverse conduct under the First Amendment.

Plaintiffs likewise cannot assert a First Amendment retaliation claim on the grounds the officers occupied the same parking lot as them, filmed them using their body cameras, or checked their license plates. None of these actions would deter a person of ordinary firmness from engaging in protected speech. Plaintiffs have no right *not* to encounter officers in a public parking lot, or *not* to be videotaped in public. Police were lawfully present in the public parking lot, and their presence does not constitute adverse conduct. *See Baden v. City of Wheaton*, No. 09 C 3015, 2010 WL 4931852, at *3 (N.D. Ill. Nov. 24, 2010) (dismissing complaint because police car parking in front of her house and driving around plaintiff's block three times would not dissuade ordinary person from exercising First Amendment rights).

Plaintiffs' video exhibits show no officer attempted to prevent Plaintiffs from leaving the Wendy's lot: in fact, when the Uber left with several protestors, the video exhibits show no officer following the departing Uber, despite Plaintiffs' allegation to the contrary. *See Am. Compl.* ¶ 36; *Exhibits B-E*. And conducting license plate checks, which provide police officers with information regarding the registration and ownership of the vehicle, is not an act which would dissuade ordinary, reasonable people from exercising First Amendment rights. *See Hallstein v. City of Hermosa Beach*, 87 F. App'x 17, 19 (9th Cir. 2003) ("intimidating stares and the 'running' of a license plate would not dissuade an ordinary person from" engaging in further protected conduct). Therefore, the conduct alleged in the Amended Complaint, in light of the incorporated video exhibits, does not meet the threshold of adversity for a First Amendment retaliation claim.

### iii. Plaintiffs Fail to Allege a Seizure under the Fourth Amendment (Count III)

Plaintiffs allege Defendants violated their Fourth Amendment rights by briefly blocking several vehicles. *See Am. Compl.* ¶ 59. A brief seizure or investigatory stop, also known as a *Terry* stop, is a seizure for purposes of the Fourth Amendment. *See United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006). To determine whether an officer subjects a citizen to a *Terry* stop, the Court must consider "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police." *Perez*, 443 F.3d at 778.

A "seizure does not occur whenever there is a governmentally caused termination of an

individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Id.* at 596-97. This test is objective and does not turn on the feelings of the persons interacting with the police. *See Torres v. Madrid*, 141 S. Ct. 989, 998 (2021) (citing *Nieves v. Bartlett*, 139 S.Ct. 1715, 1724-25 (2019)). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *United States v. Baker*, 290 F.3d 1276, 1278 (11th Cir. 2002) (emphasis added) (quotations omitted).

Officer Rivadeneira did not seize Plaintiffs. The videos show Plaintiffs were never ordered to restrict their movement in any way by the officers on the scene. During the two minutes in which Officer Rivadeneira blocked the unoccupied vehicles, Plaintiffs freely walked over to the Wendy's. Officer Rivadeneira never requested or retained identification, never gave any commands restricting Plaintiffs' movement, and never made any physical contact with Plaintiffs. In fact, he never even spoke them at the Wendy's parking lot. And Plaintiffs do not claim they ever asked Officer Rivadeneira if they could drive away in their vehicles. The video clearly shows them walking undisturbed to the Wendy's on their own volition. Likewise, Officer Rivadeneira's 14 second pause did not restrain or seize Plaintiffs. Indeed, Plaintiffs' video exhibits illustrate Plaintiffs felt quite free to walk to the Wendy's and drive away in an Uber, since these departures occurred without any interference from Officer Rivadeneira. This conduct did not "*objectively* manifest[] an intent to restrain" Plaintiffs. *Torres*, 141 S. Ct. at 998.

Likewise, the running of a license plate is not a Fourth Amendment violation. *See Am. Compl.* ¶ 59. Individuals have no expectation of privacy in their license plate information, and law enforcement can access that information without probable cause or reasonable suspicion. *See United States v. Johnson*, 811 F. App'x 564, 573-74 (11th Cir. 2020) (rejecting Fourth Amendment claim by motorist in public based on an officer's running of his vehicle tag without reasonable suspicion). Accordingly, the video exhibits show Plaintiff's rights were not violated because they were not subject to a seizure within the meaning of the Fourth Amendment.

### B.  Plaintiff's Do Not Allege an Injury in Fact

"A proper deference to the Constitution's separation of powers means that a court may

13

only reach the merits of those cases that present concrete and immediate injury." *Elend*, 471 F.3d at 1210.   Such an injury must be concrete, particularized, and actual or imminent— not hypothetical, *see Lujan*, 504 U.S. at 560.   When multiple plaintiffs sue, each plaintiff must separately establish standing.   *See Davis v. FEC*, 554 U.S. 724, 734 (2008).

Plaintiffs fail to allege the prospective injury in fact element of standing necessary to sustain a claim for declaratory relief.   Even if Plaintiffs' rights were violated on January 28, 2021, past exposure to illegal conduct does not satisfy injury in fact requirement for prospective relief "if unaccompanied by any continuing, present adverse effects." *Elend*, 471 F.3d at 1207-08 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).   A plaintiff's "past exposure to illegal conduct does not in itself show a present case or controversy." *Id.* at 1207 (cleaned up).   Past wrongs are only relevant to the extent their bear on whether Plaintiffs have alleged that there is a real and repeated threat of future injury.   *Lyons*, 461 U.S. at 102.

In *Elend*, the Eleventh Circuit dismissed a complaint for declaratory and injunctive relief by a group of protestors alleging they had been unconstitutionally moved to a restricted area when they attempted to protest President George W. Bush during a 2002 rally at the Sun Dome.   The court found it lacked jurisdiction because the plaintiffs failed to allege "a real and immediate threat of future harm." *Id.* at 1207.   The plaintiffs alleged they "fully intend to peacefully express their viewpoints in the future in a manner similar to their activities on November 2, 2002 in concert with presidential appearances at the USF Sun Dome and at other locations around the country." *Id.* at 1204.   But the Court found these allegations insufficient to confer jurisdiction because the "complaint contained no further explication of the time, location, audience, or nature of protest activity contemplated." *Id.*   Consequently, the plaintiffs failed to satisfy standing's injury in fact and redressability requirements.   *See also Dermer v. Miami-Dade Cnty*, 599 F.3d 1217, 1220-21 (11th Cir. 2010) (dismissing for lack of standing when the plaintiff failed to provide "any detail, such as when, where, or how he intends to exercise his right to free speech in the future, that illuminates the specifics of his claimed injury"); *American Fed'n of Lab.-Cong. of Indus. Orgs. v. City of Miami*, No. 07-22966-CIV, 2008 WL 11333331, at *3 (S.D. Fla. Sept. 4, 2008) (dismissing complaint for lack of standing where plaintiffs "failed to allege with sufficient specificity where, when, and how such protests will occur in the future").[4]

---

[4] Because "claims for pre-enforcement review involve the possibility of wholly prospective future injury," the standing and ripeness inquiries tend to converge on these types of claims. *Elend*, 471

The Amended Complaint alleges even less regarding the prospect of future harm than the complaint dismissed in *Elend*. Plaintiffs allege they "intend to continue their protest of Tarrio at his last known address *for the remainder of this week*[.]" *Am. Compl.* ¶ 39 (emphasis added); *see also Am. Compl.* ¶¶ 54, 57, 60.[5] Despite these repeated assertions that they would return, Plaintiffs do not allege they have ever in fact returned to protest since January. Nor do Plaintiffs provide any factual allegations detailing when, where, and how such future protest will occur. Six of the eight Plaintiffs are not even Florida residents, *id.* ¶¶ 1, 3, 5-8, and none allege they have made travel arrangements to return to Florida to protest Tarrio. *Elend* is clear: a complaint containing "no further explication of the time, location, audience, or nature of protest activity contemplated[]" is insufficient to establish a threat of future harm. 471 F.3d at 1204. Plaintiffs' allegations therefore fall short of alleging the type of "imminent" injury required to confer jurisdiction in a lawsuit seeking prospective relief. *Elend*, 471 F.3d 1207.

Plaintiffs also completely fail to allege *how* their rights will be violated if they resume protesting. Unlike in *Elend*, where the plaintiffs at least challenged a law enforcement *policy* of creating "protest zones," Plaintiffs here do not identify any County policy or ordinance that was applied to them and must prospectively be declared unlawful. Instead, they alleged Officer Rivadeneira applied a non-existent permitting requirement. Plaintiffs make no claims suggesting other officers would attempt to disperse the protest on permitting grounds, nor that Officer Rivadeneira or the other two officers involved would take the same action upon encountering the protestors again. It is therefore entirely speculative that this rationale would be applied again.

Nor have Plaintiffs alleged facts showing they are likely to encounter the three Defendants they have chosen to sue—Officer Rivadeneira, Officer Sanchez, or Sergeant Fernandez—should they resume protesting at Tarrio's last known address. Defendants Rivadeneira, Sanchez and Fernandez, after all, are not the only three police office in Miami-Dade County. The County is not a small prairie town with a sheriff and two deputies. It is a sprawling metropolis, one the largest counties in the Southeast. Officers Rivadeneira, Sanchez, and Fernandez are three of 2,800

---

F.3d 1205. For the same reasons that Plaintiffs have not alleged an injury in fact for purposes of declaratory relief, they have not alleged that this matter is ripe for judicial review. *Id.* at 1210-12.

[5] It is not clear whether Plaintiffs are referring to the week of the protest itself (January 28, 2021) or the date of the filing of the Amended Complaint (May 5, 2021). In either event, both of these weeks have passed and Plaintiffs do not allege that they ever returned to protest.

OFFICE OF THE COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE (305) 375-5151

police officers in Miami-Dade.[6]  Plaintiffs thus fall very short of establishing that *these Defendants* are likely to injure them in the future by interfering with the right to protest.

Moreover, Counts II and III, which relate to the conduct occurring in the Wendy's parking lot after the protest was disbursed, provide no basis for declaratory relief.  Plaintiffs do not allege any facts showing a plausible chain of events in which they will return to the Wendy's parking lot and their rights will be violated in the manner they have allege here.  Count II requests a declaration against any further attempts "to chill" Plaintiffs' speech but Plaintiffs do not allege how their speech is likely to be chilled in the future as they provide no allegations showing what it is likely to occur if they return to protest.  *Am. Compl.* ¶ 57.  Count III requests a declaration that blocking the protestors from leaving is a violation of the Fourth Amendment but, as the videos show, that never happened, and Plaintiffs plead no facts showing it will happen in the immediate future.  Plaintiff's suggestion of future harm is speculative, not imminent.  Consequently, the Court should dismiss the Amended Complaint for failure to allege an imminent injury in fact.

### C.  Plaintiffs Do Not Satisfy Article III's Redressability Requirement

When the remedy sought is declaratory relief, redressability hinges not upon whether a plaintiff's rights were violated in the past, but whether a plaintiff's rights are likely to be violated *in the future*.  *See Elend* at 1207-08 (citing *Lyons*, 461 U.S. at 102).  The alleged future injury must be likely to be redressed by such relief.  *See Lujan*, 504 U.S. at 561.  Redressability requires the relief sought to be specific: courts will not issue an order simply mandating a party "obey the law" generally.  *Elend,* 471 F.3d at 1209 ("It is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible.").  But here, that is exactly what Plaintiffs seek.

Plaintiffs request three declarations: (1) that "they have [sic] right to resume and continue

---

[6]      Miami-Dade   County   Police   Department,   Police   Careers, https://www.miamidade.gov/global/service.page?Mduid_service=ser1470668102245350   (last visited June 24, 2021) ("MDPD is charged with the safety of over 2.5 million residents who live within a 2,109 square mile area. In order to accomplish this formidable task, the Department utilizes the services of approximately 2,800 sworn officers and 1,500 support personnel.").  Count II indicates Plaintiffs seek to apply their declaration to "any Miami-Dade Police Officer," *Am. Compl.* ¶ 57, but it is axiomatic that the Court cannot enter prospective relief against non-parties not subject to its jurisdiction.  Whether Plaintiffs can sue the County itself is discussed below in Part.II.

OFFICE OF THE COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE (305) 375-5151

their lawful protest of the racist Tarrio," *Am. Compl.* ¶ 54, (2) that "they have [sic] right to resume and continue their lawful protest of the racist Tarrio and that any further attempts by Defendants, or any Miami-Dade Police Officer, to chill that speech violate Plaintiffs' First amendment rights," *id.* ¶ 57, and (3) "that continued seizures of their persons by blocking their vehicles in and preventing the Protesters from leaving any area without probable cause is a violation of their Fourth Amendment rights . . ." *id.* ¶ 60.

Plaintiffs' first count for declaratory relief provides no particularity whatsoever. Obviously, all Americans have the right to lawful protest on any subject matter whatsoever. Plaintiffs' second count fares little better because, as in *Elend*, Plaintiffs fail to allege with any particularity what protest is likely to take place in the future or how any defendant is likely to attempt to chill that protest. A generic declaration stating Defendants "may not chill speech" is the very type of ambiguous, abstract, non-specific mandate that the Eleventh Circuit forbade. *Id.* at 1209-10; *see also City of Miami*, 2008 WL 11333331, at *3. With respect to their third count, Plaintiffs have not plausibly alleged that their vehicles will be blocked in should they resume protesting and, as shown in the previous section, no constitutional right was transgressed with Officer Rivadeneira blocked unoccupied vehicles for less than two minutes.

As such, the declarations Plaintiffs seek will also not redress Plaintiffs alleged future injuries. As noted above, Plaintiffs do not ask the Court to declare any current policy of Miami-Dade County or its police department to be unlawful. Instead, Plaintiffs request declarations directed at two or three out of 2,800 officers employed by the County, yet make no allegations regarding how Defendants would likely respond to the scene of Plaintiffs' future protests or act in the same manner towards protestors. What should happen if the Court issues the requested declarations, Plaintiffs return to protest, the residents again call the police and, as is likely to happen in a County has large as this one, *other* police officers who are not parties to this case are dispatched to the scene? In that scenario, the Court's relief would redress nothing at all.

And even if one of the three Defendants were dispatched to the scene of Plaintiffs' reincarnated protest, the amorphous declaration Plaintiffs seek would hardly provide them guidance. If traffic or pedestrian laws are broken, may they enforce those duly enacted laws against Plaintiffs or what would that be considered an "unlawful chill"? What if, in addition to the eight plaintiffs, 50 additional protestors show up and begin to crowd the residential street, "chanting" at the residents? The declarations sought here provide no guidance for these situations

precisely because the Amended Complaint does not contain detailed allegations regarding what form the hypothetical future protest is likely to take. *See Elend*, 471 F.3d at 1210 ("for a case to be entitled to an adjudication on the merits, there must be a substantial indication that the injury will occur and, if so, what shape that injury may take"). Declaratory relief is not an available remedy for what is alleged to be, at most, a one-off constitutional violation, with no concretized indication of what will transpire in the future.

Nor does the Amended Complaint contain any allegations claiming declaratory relief is likely to redress future retaliation or unreasonable seizures. Plaintiffs clearly have not satisfied their burden of demonstrating how the declarations they seek will redress imminent and concrete harms because detail allegations the contours of their hypothetical future protest and the likely law enforcement response are entirely absent. Because Plaintiffs have not presented a credible threat that their rights will be violated imminently by Defendants *and* that declaratory relief will prevent such an injury, they have not established Article III standing and the Amended Complaint must be dismissed for lack of jurisdiction and failure to state a claim for declaratory relief.

## II.      THE OFFICIAL CAPACITY CLAIMS MUST BE DISMISSED

Plaintiffs sued all three defendants in their official capacities, in addition to their individual capacities. *See Am. Compl.* at 10-11 (indicating that all counts are brought against Defendants in their individual and official capacities). These official capacity claims must be dismissed because (1) the real party in interest is Miami-Dade County—not the individual officers—and the County has not been properly joined; and (2) Plaintiffs do not state a claim for municipal liability.

### A.    Plaintiffs Have Not Properly Named Miami-Dade County as a Defendant and Have Not Properly Served the County with the Summons and Complaint

"Official-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (cleaned up). "[A]n official-capacity suit is, in all respects other than name, *to be treated as a suit against the entity*." *Id.* at 166 (emphasis added). "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, *there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly*." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (emphasis added); *see also Cone v. Sodre*, No. 13-24674-Civ, 2014 WL 2998671, at *2 (S.D. Fla. July 2, 2014).

18

Since an official capacity claim is a claim against the County, Plaintiffs must satisfy Rule 4's requirements for commencing suit against a municipality. Rule 4 provides a summons must "name the court **and the parties**." Fed. R. Civ. P. 4(a)(1) (emphasis added); *see also* Fed. R. Civ. P. 10(a) (title of pleading must name the parties). The summons must also "be directed **to the defendant**." Fed. R. Civ. P. 4(a)(2) (emphasis added). A party must serve a local government by "(A) delivering a copy . . . to its chief executive officer; or (B) serving a copy . . . in the manner prescribe by that state's law." Fed. R. Civ. P. 4(j)(2). The manner for serving a county under Florida law is to serve process "(a) [o]n the president, mayor, chair, or other head thereof; and in his or her absence; (b) [o]n the vice president, vice mayor, or vice chair, or in the absence of all of the above; (c) [o]n any member of the governing board, council or commission." Fla. Stat. § 48.111(1).

Plaintiffs' service of process here—delivering summons to three individual police officers and not naming the County as a party in the summons or the Amended Complaint—is insufficient to commence an action against the County. *See* ECF Nos. 18, 18-1, 18-2 (indicating that the Summons and Complaint was served only upon the three defendants individually). Neither Rule 4(j) nor Fla. Stat. § 48.111(1) permits service on a Florida county by suing and serving an employee in their official capacity. Plaintiffs' failure to name Miami-Dade County in the summons and to serve the County, the actual party in interest to the official capacity claims, requires the official capacity claims to be dismissed under Rules 12(b)(4) and 12(b)(5). *See Lordeus v. Perez*, Case No. 17-20726-Civ, 2017 WL 8230892, at *2 (S.D. Fla. Apr. 27, 2017) (dismissing official capacity claims where "Plaintiff's service of a summons on [an individual County employee] did not meet federal or state service of process rules as he neither named nor properly served the County").

### B. Plaintiffs Fail to State a Cause of Action Against the County Because the Complaint Lacks Custom or Policy Allegations under *Monell*

Even if Plaintiffs had properly initiated an action against the County from a procedural standpoint, their official capacity claims still fail because Plaintiffs do not allege their rights were violated because of a municipal custom or policy.

Local governments are not vicariously liable under 42 U.S.C. § 1983 whenever their agents or employees have caused a constitutional injury. *See Monell*, 436 U.S. at 691 ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *see also City*

of *Canton v. Harris*, 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983."); *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) ("A county's liability under § 1983 may not be based on the doctrine of respondeat superior."). "[I]t is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Springfield v. Kibbe*, 480 U.S. 257, 267 (1987); *see also Skop v. City of Atlanta*, 485 F.3d at 1130, 1145 (11th Cir. 2007) ("But it is by now axiomatic that in order to be held liable for a § 1983 violation, a municipality must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory."). "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986)

To state a § 1983 claim against the County, Plaintiffs must allege the County itself is liable for any purported injuries because of an identifiable policy, practice, or custom. *See Grech*, 335 F.3d at 1329. To do this, a plaintiff must allege that the constitutional violations that allegedly injured him were the result of either (1) an officially promulgated County policy or (2) an unofficial custom or practice of the County shown through the repeated acts of a final policymaker for the County. *Id.* at 1329. "*Monell's* 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective." *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 39 (2010); *see also Church v. Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994).

Plaintiffs do not allege that any officer violated their rights because of a County policy. No County policies—official or unofficial—are identified in the Amended Complaint. *See generally Am. Compl.* To the contrary, Plaintiffs allege Officer Rivadeneira dispersed their protest because they did not have a permit, even though there was no requirement for them to obtain one. *See Am. Compl.* ¶ 19-20, 22, 24. Plaintiffs also do not allege any County policy *will* cause their constitutional rights to be violated in the future, which they must do in seeking declaratory relief. *See Lyons*, 461 U.S. at 105-06 (explaining that to sue a municipality for prospective relief for unlawful chokeholds plaintiffs would have to allege that *all* police officers *always* choke citizens whom they have an encounter with or that the City authorized its officers to act in such a manner). Therefore, the official capacity claims fail on the merits and are subject to dismissal under Rules 12(b)(1) and 12(b)(6).

## **CONCLUSION**

The Court should dismiss the Amended Complaint with prejudice.

Dated:  June 30, 2021.

Respectfully submitted,

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By:    /s/ Ezra S. Greenberg
Ezra S. Greenberg
Assistant County Attorney
Fla. Bar. No. 85018
Telephone: (305) 375-5151
Facsimile: (305) 375-5643
Email: ezrag@miamidade.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this day on

Plaintiff's counsel via CM/ECF.

/s/ Ezra S. Greenberg
Assistant County Attorney