## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| MIKE DONOVAN, *et. al.*, | : | |
| | : | |
| Plaintiff(s), | : | |
| | : | |
| v. | : | **CASE NO.: 21-20499-CIV-ALTONAGA** |
| | : | |
| Officers Fernandez Rivadeneira, | : | |
| *et. al*, | : | |
| | : | |
| Defendant(s). | : | |
| _____ | : | |

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

Defendants Fernando Rivadeneira, Bridget Sanchez, and Leonard Fernandez reply to Plaintiff's Response [ECF No. 32] ("Resp.") to Defendants' Motion to Dismiss [ECF No. 22] ("Mot.") the Amended Complaint [ECF No. 12] ("the Complaint" or "*Am. Compl.*").

### MEMORANDUM OF LAW

**I.   PLAINTIFFS DO NOT STATE A CLAIM FOR DECLARATORY RELIEF**

**A.  Plaintiffs Have Not Demonstrated the Violation of a Constitutional Right**

***i.   Plaintiffs' First Amendment Rights Were Not Violated* (Count I)**

Plaintiffs do not respond to Defendants' central argument that their First Amendment rights were not violated because Officer Rivadeneira had probable cause to believe that they had violated the Noise Ordinance and the unlawful assembly statute. Mot. at 8-11.[1] Importantly, Plaintiffs also do not provide any factual basis to dispute that theirs was a targeted residential picket. Their

---

[1] As an initial matter, Plaintiffs wholly ignore the five videos attached to their Complaint in their factual recitation and analysis and do not respond to Defendants' request that the Court enter an order permitting the videos to be conventionally filed. Mot. at 2 n.2. Plaintiffs have not only incorporated these videos by reference in their Complaint but previously represented that they "***are critical*** to this Complaint as ***the events giving rise to this action are documented in these videos***." ECF No. 4 ¶ 5 (emphasis added). Defendants agree. All the conditions in the Court's prior Order [ECF No. 5] have been satisfied, and the Court should therefore enter an order requiring the conventional filing of the videos unless it finds that good cause exists to grant this motion based on the standing considerations without regard to the merits of the initial incident. Because Plaintiffs do not contest that the videos are incorporated by reference, this reply will continue to analyze the pleadings based upon the objective depictions in the videos and not the contradictory allegations in the body of the Complaint. *See* Mot. at 2 n.2.

1

Complaint alleges that the protest took place at Tarrio's residence and was to protest Tarrio. *Am. Compl.* ¶¶ 12, 15-16. And their incorporated video shows Plaintiffs at the foot of the driveway "targeting" the residence. *See Exhibit A.* Plaintiffs concede: "When the Defendant police officers initially arrive, Protesters were picking **on the street in front of Tarrio's residence**." Resp. at 10 (emphasis added). As such, there was clearly probable cause to believe that Plaintiffs were engaged in the type of targeted residential picket addressed in *Frisby*. Nevertheless, Plaintiffs make several arguments that their First Amendment rights were violated.

*First*, Plaintiffs argue, based solely on their allegation that the officers arrived after Tarrio's sister called the police, that the dispersal order must have been content-based. Resp. at 5-6; *Am. Compl.* ¶ 16. Plaintiffs draw two implausible inferences from this: first, that Tarrio's sister only called the police because of the content of the protest and, second, that her motivations can be imputed to Officer Rivadeneira. These leaps are not plausibly supported by the Complaint's factual allegations and are at odds with the allegation—confirmed by *Exhibit A*—that Officer Rivadeneira told the protesters that they would have to leave it they didn't have a permit. *Id.* ¶ 22.

Plaintiffs' content-based argument faces a second, even larger hurdle, which is that probable cause existed to arrest or disperse Plaintiffs because the facts as depicted in the video clearly show that probable cause existed to believe that Plaintiffs were violating the Noise Ordinance and the unlawful assembly statute. Mot. at 8-11. The presence of probable cause obviates the needs to conduct any analysis of the underlying motivations of the officer. Because "protected speech is often a legitimate consideration when deciding whether to make an arrest," the Supreme Court adopted a general rule that presence of probable cause defeats a First Amendment claim. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). The Court explained that a "probable cause analysis, [] provides an objective inquiry that avoids the significant problems that would arise from reviewing police conduct under a purely subjective standard." *Id.* at 1727. And "because this inquiry is objective, the statements and motivations of the particular arresting officer are 'irrelevant' at this stage." *Id.*; *see also See Redd v. City of Enter.*, 140 F.3d 1378, 1383 (11th Cir. 1998) ("When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested."); *accord Sada v. City of Altamonte Springs*, 434 F. App'x 845, 851 (11th Cir. 2011) (probable cause defeats First and Fourth Amendment claims).

*Second*, despite conceding that they were engaged in a targeted residential picket, Plaintiffs

appear to argue that the lack of an anti-picketing ordinance precludes the application of *Frisby v. Shultz*, 487 U.S. 474 (1988).  Resp. at 6-10.  But *Frisby* stands for the proposition that content-neutral restrictions prohibiting targeted residential picketing are constitutional.  Whether those restrictions arise through state statue, municipal ordinance, or the policymaking discretion of police departments and officers is a question of state and local law that does not alter *Frisby*'s ultimate First Amendment analysis.  *Cf. Dean v. Byerley*, 354 F.3d 540, 563–64 (6th Cir. 2004) (Sutton, J., dissenting) ("Fifteen years after *Frisby*, it is difficult to understand how Mr. Dean can claim that he had a constitutional right . . . to engage in what he acknowledges was targeted residential picketing of the Byerley home . . . . That conclusion seems not just improbable but impossible in the aftermath of *Frisby*[.]").

*Third*, Plaintiffs contend that the dispersal order was overbroad because it went beyond ordering Plaintiffs to leave the targeted house.  Resp. at 9-10.  This argument is not based upon an accurate recitation of the facts since at the time Officer Rivadeneira gave the order to leave Plaintiffs were, in fact, picketing in front of the targeted residence.  And Plaintiffs' suggestion that Officer Rivadeneira was required to give a less restrictive order before dispersing the protest is not supported by their authorities.  Officer Rivadeneira had probable cause to believe Plaintiffs were violating the Noise Ordinance.  As a law enforcement officer, he was entitled to act to remediate the violation up to and including arresting Plaintiffs and certainly threating arrest.[2]  *See* Mot. at 10 (citing cases upholding enforcement of noise ordinances through citation, arrest, and prosecution); *Pine*, 762 F.3d at 1269-75 (upholding similar noise ordinance).  And he further had probable cause to believe Plaintiffs were violating the unlawful assembly statute, which specifically provides for a dispersal remedy.  Fla. Stat. §§ 870.02, 870.04; *Freeman v. Town of Eatonville, Fla.*, 225 F. App'x 775, 778 (11th Cir. 2006).  *Ovadal v. City of Madison, Wisconsin*, 416 F.3d 531, 537 (7th Cir. 2005), is easily distinguishable because there the reckless drivers—not the plaintiff—were the ones violating the law.  Plaintiffs cite no case extending the rationale of *Ovadal* to preclude enforcement of a criminal statute when the ***plaintiffs themselves*** break the law.

In any event, Plaintiffs' arguments all overlook that there was probable cause to believe Plaintiffs violated criminal statutes: the Noise Ordinance and the unlawful assembly statute.  Defendants cited authority upholding the application of these and similar laws.  Mot. at 10.  Given

---

[2] Plaintiffs repeat their conclusory allegation that Officer Sanchez "supported" Rivadeneira's commands, but the incorporated video also contradicts this allegation.  Mot. at 7 n.3.

3

that there was already an existing violation of the law, *Frisby* simply throws an extra weight on the scale of constitutionality because of the decreased protection afforded to protests targeting a residence. *See Pine v. City of W. Palm Beach, FL*, 762 F.3d 1262, 1269 (11th Cir. 2014) (the government's "substantial interest in protecting its citizens from unwelcome noise . . . is at is greatest when it concerns the well-being, tranquility, and privacy of the home") (cleaned up).

Ultimately, Plaintiffs present no argument challenging the presence of probable cause for their violation of the Noise Ordinance or the unlawful assembly statute. And they do not argue that the application of either of these statutes was unconstitutional. Plaintiffs have therefore provided no basis upon which the Court can reject Defendants arguments that Officer Rivadeneira did not violate Plaintiffs' First Amendment rights. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (lower court abused discretion by *sua sponte* finding statute unconstitutional); *see also Western Sur. Co. v. Steuerwald*, 760 F. App'x. 810, 817-18 (11th Cir. 2019) ("The onus is upon the parties to formulate arguments. . . . a party must do more than merely raise the issue in a perfunctory manner, without supporting arguments and citation to authorities.") (cleaned up); *accord Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988); *accord Brown v. Buddy Bee Corp.*, 14-24368-CIV, 2015 WL 11233388, at *4 (S.D. Fla. Mar. 11, 2015) (Altonaga, J.) (finding that "failure to address [an opponent's] nonfrivolous legal argument is tantamount to failure to respond to the Motion" and justified granting the motion by default). The arguments that probable cause existed that Plaintiffs violated the law is functionally unopposed. In view of the conduct depicted in the video, Plaintiffs have not shown that Count I states a claim for declaratory relief.

### ii. *Plaintiffs Were Not Unlawfully Retaliated Against* (Count II)

Plaintiffs' new argument that the initial act of dispersing the protest was retaliatory, Resp. at 10, appears to be an amendment to Count II, as the Complaint cites the events occurring the Wendy's parking lot as the basis for the harassment/intimidation allegations. *See Am. Compl.* ¶¶ 28-39, 56. Our Circuit has "repeatedly [] held that plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)). In any event, because there was probable cause to believe that Plaintiffs violated the Noise Ordinance and unlawful assembly statute, the claim that the threat to arrest them was retaliatory (even if asserted) would still fail. *See Nieves*, 139 S. Ct. at 1728 ("Because there was probable cause to arrest Bartlett, his retaliatory arrest claim fails as a matter of law."); *Redd*, 140 F.3d at 1383.

4

Plaintiffs' remaining argument is predicated upon on facts contradicted by the incorporated videos.  These videos show Plaintiffs were never seized in the parking lot or prevented from moving; they were walking freely and outside of their vehicles when Officer Rivadeneira parked for less than two minutes to call in license plate numbers.  *See* Mot. at 11-12.  No commands were ever given to Plaintiffs restricting their movements and no Plaintiff was ever impeded from leaving.  *See Exhibits B-E.*  Plaintiffs do not refute that the actual conduct depicted in the videos does not rise to the level of adversity necessary to make out this claim.  *See* Mot. at 11-12.

       *iii.*        ***Plaintiffs Were Not Seized Under the Fourth Amendment*** **(Count III)**

Plaintiffs' discussion of their Fourth Amendment claim likewise ignores the incorporated videos. Mot. at 12-13.  No Plaintiff was ever stopped or prevented from leaving and several left unimpeded.  *See Exhibits B-E.*  Plaintiffs acknowledge in passing that (contrary to the Complaint's allegations) "some Protesters left" (Resp. at 12), as *Exhibit D* clearly depicts.

In determining whether a *Terry* stop occurred "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *United States v. Baker*, 290 F.3d 1276, 1278 (11th Cir. 2002) (quotations omitted).  A seizure only occurs when "the challenged conduct ***objectively manifests*** an intent to restrain" the plaintiff.  *Torres v. Madrid*, 141 S. Ct. 989, 991 (2021) (emphasis added). Plaintiffs cite no caselaw even remotely supporting their contention that blocking *unoccupied* vehicles and then permitting occupied vehicles to leave freely can constitute a seizure.  Nor does being in a public parking lot with police cruises constitute a seizure where, as here, Plaintiffs were never given any commands restricting their movements, the officers never even asked for their identification, and several decided to leave and depart unmolested.[3]

Plaintiffs squander the remainder of their argument on Count III arguing the lack of probable cause or reasonable suspicion to detain them in the Wendy's parking lot, Resp. at 12-14, and the officers unreasonably prolonged the stop by running their license tags and blocking their

---

[3] The video even shows that the moment the Black Nissan's break light went on—indicating an intent to reverse—the police cruiser pulled forward thereby enabling it to so do.  The police cruiser initially pulls behind the Black Nissan while it is pulling into a parking space.  *Exhibit C* at 0:10-0:13.  But less than ***two second*** after the Nissan's break light illuminates—indicating that the Black Nissan may have intended to reverses—the police cruiser begins to drive away, thereby enabling the Black Nissan to depart unobstructed.  *Id.* at 0:24-0:26. This is not a seizure.

OFFICE OF THE COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE (305) 375-5151

vehicles, *id.* at 16.  On the first point, Defendants never argued that there was reasonable suspicion or probable cause, but that no seizure occurred at all.  On the second point, Plaintiffs erroneously assume that there was a seizure to begin with, which is roundly contradicted by the incorporated videos.  As we noted in the Motion, the running of a license plate does not constitute a Fourth Amendment intrusion.  *See United States v. Johnson*, 811 F. App'x 564, 573-74 (11th Cir. 2020).  Nor does being in a public parking lot with police cars absent some objective order or police action restricting an individual's freedom of movement. *Baker*, 290 F.3d at 1279 (officer walking up to parked car, showing his badge, and speaking to occupants did not constitute *Terry* stop where he gave no commands restricting vehicle's occupants). *Exhibits B-E* show an objectively reasonable person would have felt free to leave, as several Plaintiffs obviously did.  Thus, the Court should disregard the Complaint's conclusory, subjective allegations that Plaintiffs were not free to leave and accordingly find that no Fourth Amendment seizure occurred in the Wendy's parking lot.

### B.  Plaintiffs Have Not Demonstrated Article III Standing

Assuming, *arguendo*, that Plaintiffs have alleged some *past* injury, it does not follow that they may seek declaratory relief because they have failed in the burden to establish standing.

Plaintiffs weakly attempt to distinguish *Elend* by arguing that they have alleged "the place" where they intend to resume protesting—Tarrio's last known address.  Based on a single allegation that all Plaintiffs intend to continue their protest "for the remainder of the week" Plaintiffs claim that have pleaded a credible risk of enforcement such that standing is conferred.

This case has eight Plaintiffs and three claims for declaratory relief.  But "[s]tanding is not dispensed in gross," and "a plaintiff must demonstrate standing for each claim he seeks to press." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citations omitted).  When multiple plaintiffs raise the same issue, each plaintiff must establish his own standing if either (a) each plaintiff seeks a different form of relief or (b) claims that raise the same general issue are nevertheless predicated on distinct facts. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650–51 & n.3 (2017).  "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984) (abrogated on other grounds).  Here, Plaintiffs also do not allege any facts that "the injury would be repeated imminently." *Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006).

<u>First</u>, Plaintiffs' singular allegation that they intend to continue their protest for the

remainder of the week is insufficient to confer standing, especially given that six Plaintiffs do not even live in Florida. *Am. Compl.* ¶¶ 1-8. Plaintiff do not allege that they have ever made another attempt to protest in front of Tarrio's house, or any other place, and they provide no other specific details regarding when or how they will protest. As such, Plaintiffs' conclusory allegations of their intent to resume their protest in insufficient to meet their burden under *Twombly* and *Iqbal*.

Second, Plaintiffs' alleged past exposure to unlawful conduct does not create a case or controversy "if unaccompanied by any continuing, present adverse effects." *Elend*, 471 F.3d at 1207. Plaintiffs attempt to trump *Elend* with a handful of Supreme Court cases, but each of these cases presented two things that are sorely lacking here: a history by the plaintiffs of repeatedly exercising their First Amendment rights beyond a single incident and a law that the plaintiffs established would thwart their free speech rights. *See id.* at 1209 (distinguishing prior caselaw finding standing "where it was known exactly where the activists intended to demonstrate ***and precisely which local ordinance was invoked to stop them***" and noting that "Other than ***the one instance*** in November 2002, we are not even given a description of Plaintiffs' past conduct from which to infer that they might act in a similar manner in the future") (emphasis added).

In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), two issue advocacy groups jointly sued for a declaration challenge the constitutionality of "anti-false statements" ***statute***. The lower court held they lacked standing because they failed to establish the likelihood of future harm where the state had not made a final determination and it was speculative whether a future complaint would be brought. *Id.* at 156. The Supreme Court reversed, finding that the plaintiffs faced a credible threat of future prosecution ***under the statute*** because (1) the state had already commenced enforcement actions and found probable cause against one plaintiff, (2) any person could bring a future complaint under the statute, (3) proceedings under the statute were occurring on a regular basis (20 to 80 times per year), and (4) a billboard vendor refused to display one plaintiff's message after receiving a letter from the state agency. *Id.* at 164-165. No party questioned that the plaintiffs'—advocacy groups disseminating their viewpoints—established that they would continue to engage in the type of advocacy subjecting them to enforcement under the statute. *Id.* at 155-156.

In *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979), the ***United Farm Workers Union*** had standing to challenge two provisions of an Arizona employee relations ***statute*** governing union elections because it had engaged in more than 400 union elections in nearby

7

California, had actively engaged in publicity and boycott campaigns, and intended to organize and represent employees in Arizona, which it could not do because of the statute.  *Id.* at 300-301.

In *Doran v. Salem Inn.*, *Inc.*, 422 U.S. 922 (1975), the challenged **ordinance** baring topless waitressing and entertaining was enforced on **three consecutive days** against a business establishment that operated topless bars.  Finally, in *Steffel v. Thompson*, 415 U.S. 452 (1974), an anti-war activist was **twice** warned on different days to stop handbilling and his companion was arrested for criminal trespass after the manager of the shopping plaza called the police on the second day.  The injury in fact requirement was never even at issue because the parties stipulated that if the plaintiff returned to handbill, he would be arrested under the same statute.  *Id.* at 456. Instead, *Steffel* focused on the propriety of granting declaratory relief under the Supreme Court's abstention caselaw when state criminal proceedings are pending or threatened.  *Id.* at 459-475.

Unlike in these cases, our Plaintiffs are not national advocacy groups, unions, or other organizations whose mission is such that they can credibly allege, in conclusory fashion, that they "intend to resume their protest."  Rather, they are three Virginia residents, three Illinois residents, and two Florida residents with no alleged connection to each other except that they "came together"—one time—to protest at Tarrio's house.  *Am. Compl.* ¶ 12.  They have not alleged a second attempt to protest at Tarrio's house or anywhere else and they have not alleged to have been threatened with arrest if they returned.  Plaintiffs' claim that declaratory judgments exist for one-off events like this is not supported by any of their cited cases.  In those case there was a clear indication of the plaintiffs' continued intention to engage in expressive activities because of the nature of their organizations and business and/or their **repeated** prior actions and an equally clear indicated of the specific state action that would occur in response to the plaintiffs' expression. Lacking both of those factors here, Plaintiffs have not plead an injury that **is likely to be repeated** based on our one-off incident.  *Elend*, 471 at 1208.

Third, as noted, Plaintiffs claim for declaratory relief does not challenge any statute, ordinance, or policy that was applied to them **and which they have alleged is likely to be applied in the future**.  This argument was raised in the Motion but was ignored.  Mot. at 15.[4]

Plaintiffs also do not offer a persuasive explanation that their choice of defendants will result in the redressability of the alleged harm.  Plaintiffs elected to sue three low-ranking police

---

[4] In *Elend*, this was not an issue because the Plaintiffs there alleged a policy of establishing "protest zones."  471 F.3d at 1206-07.

officers, only one of whom actually disbursed their protest, and he appears to have done so based on a mistaken belief that a permit was required.  Moreover, Plaintiffs' first protest was not a lawful assembly but a violation of the County's Noise Ordinance and unlawful assembly statute. Plaintiffs do not allege what shape their future protest will take and, moreover, they provide no allegations indicating that any of our three defendants will act in an unconstitutional fashion or will even respond to the scene at all.  Plaintiffs' Response wholly ignores Defendants' arguments that declaratory relief is inappropriate for one-off occurrence when no law, ordinance, or policy is alleged to have been unconstitutionally applied.  Mot. at 15, 17-18.  Plaintiffs concede that the declaration they seek is limited to the parties before the Court, Resp. at 18, but then ignore Defendants' arguments regarding the inappropriateness of suing *these* Defendants.  Mot. at 15-17.

*Elend* specifically distinguish a prior holding that found standing because in that case it was clear which local ordinance would be invoked to stop the activists.  *Elend*, 471 F.3d at 1209. In other words, Plaintiffs do not satisfy their burden of showing a credible threat of future injury because they do not provide a sufficient factual basis showing what ***the reaction*** to a future protest will be.  *Elend*, 471 F.3d at 1207-08 (plaintiffs must establish more than past exposure to illegal conduct to show "continuing, present adverse effects").  And Plaintiffs further provide no response to the arguments that they do not plead any facts showing that the events in the Wendy's parking lot are likely to recur among our eight Plaintiffs and three Defendants.  Mot. at 16.

Finally, on redressability, Plaintiffs defend the propriety of declaratory judgments generally but do not respond to Defendants' specific arguments or show that the declarations they seek will redress imminent harms.  Instead, they confirm they are simply seeking improper "follow the law" declarations.  Mot. at 16-18; Resp. at 19 (seeking declaration that they have a right to protest in front of Tarrio's house, on a public sidewalk or street, and not be retaliated against or unlawfully seized while carrying out those activities).  This contrasts starkly with the cases Plaintiffs cite which sought declarations on the constitutionality of specific laws or ordinances that were likely to be applied prospectively, rather than merely affirm the viability the constitutional rights in the abstract.  Plaintiffs appear to acknowledge this, stating that "[a] declaration that ***a law*** should not be enforced against a plaintiff frees the plaintiff to engaged in constitutionally protected conduct," Resp. at 17 (emphasis added), but their Complaint does not identify any law that Plaintiffs seek to declare may not be enforce against them.

In sum, the incorporated video shows Officer Rivadeneira lawfully dispersed the protest

but articulated the wrong legal theory for doing so.  *See Exhibit A*; *see also* Mot. at 10 (explaining that lawfulness of police action does not depend on the offense cited at the time).  Plaintiffs have failed to plausibly allege another explanation for this event.  It is therefore entirely implausible that these allegations suffice to state a claim for "imminent harm" sufficient to confer standing for declaratory relief.  Even assuming some illegality is alleged, Plaintiffs have not plead sufficient facts to establish a likelihood of its imminent recurrence that will be redressed by the declarations they seek here against Defendants.  Plaintiffs therefore lack standing to seek prospective relief.

## II.      THE OFFICIAL CAPACITY CLAIMS MUST BE DISMISSED

Plaintiffs provide no response to either the procedural or the substantive arguments raised against their official capacity claims.  Mot. at 18-20.  Instead, they claim that they are "preserv[ing]" their claims in the event that discovery bears them out.  Resp. at 4, 19.  This is not an acceptable method of pleading.  "Discovery should follow the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (quoting *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981); *accord Carter v. DeKalb County*, *Ga.*, 521 F. App'x. 725, 729 (11th Cir. 2013) (affirming dismissal of *Monell* claim and rejecting argument that the plaintiff "should have had the opportunity to conduct discovery to determine the customs, patterns and practices of DeKalb County" because "discovery follows a well-pleaded complaint; not the other way around"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 . . . does not **unlock the doors of discovery** for a plaintiff armed with nothing more than conclusions.") (emphasis added); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process . . .").  Accordingly, Plaintiff's official capacity claims fail and should be dismissed.

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.  *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Bello v. Miami-Dade Police Dep't/Miami-Dade County*, 19-22042-CIV, 2019 WL 4674636, at *4 (S.D. Fla. Sept. 25, 2019) (apply *Daewoo* to dismiss without leave to amend).

Dated:  July 6, 2021.

Respectfully submitted,

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By:    /s/ Ezra S. Greenberg
Ezra S. Greenberg
Assistant County Attorney
Fla. Bar. No. 85018
Telephone: (305) 375-5151
Email: ezrag@miamidade.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this day on

Plaintiff's counsel via CM/ECF.

/s/ Ezra S. Greenberg
Assistant County Attorney

**11**