UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20499-CIV-ALTONAGA/Torres

MIKE DONOVAN, *et al.*,

     Plaintiffs,

v.

FERNANDO RIVADENEIRA, *et al.*,

     Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants, Fernando Rivadeneira, Bridget Sanchez, and Leonard Fernandez's Motion to Dismiss Plaintiffs' Amended Complaint [ECF No. 22], filed on June 30, 2021. Plaintiffs[1] filed a Response in Opposition [ECF No. 32], to which Defendants filed a Reply [ECF No. 40]. The Court has carefully considered the Amended Complaint [ECF No. 12], the parties' submissions, the record, and applicable law. For the following reasons, the Motion is granted.

## I.  BACKGROUND

This declaratory relief action arises out of events that occurred on January 28, 2021 in Miami-Dade County. (*See generally* Am. Compl.). Plaintiffs are eight individual citizens of Florida, Illinois, or Virginia. (*See id.* ¶¶ 1–8). Defendants, named in their individual and official capacities, are police officers and employees of Miami-Dade County. (*See id.* ¶¶ 9–11).

***The Protest.*** On January 28, 2021, Plaintiffs participated in a protest at the residence of Henry "Enrique" Tarrio, alleged to be the chairman of the Proud Boys, a white nationalist

---

[1] Plaintiffs include Michael Donovan, Chinedu Ernesto, Wayne Schneider, Lavar Peters, Timothy Shipe, Dylan Jorgensen, Cortez Nathan, and Blake Ratcliff. (*See* Am. Compl. ¶¶ 1–8).

organization linked to political violence in the United States. (*See id.* ¶¶ 12–13). The protestors, including Plaintiffs, chanted while on public property outside the Tarrio residence. (*See id.* ¶¶ 15, 21). Tarrio's sister emerged from the residence and informed the protesters that she had called the police. (*See id.* ¶ 16).

Two of the Defendants, Officers Rivadeneira and Sanchez, arrived at the scene shortly thereafter. (*See id.* ¶ 18). Upon learning that the protesters did not have a permit, Officer Rivadeneira told them they needed to leave or they would be arrested. (*See id.* ¶ 22). Plaintiffs state they would have continued to protest, absent the threat of arrest. (*See id.* ¶ 25).

***The Encounter at Wendy's.*** The protesters, including Plaintiffs, left the Tarrio residence and drove to a nearby Wendy's, followed by all three Defendants. (*See id.* ¶¶ 28–29, 40). At the Wendy's, Officer Rivadeneira exited his vehicle and called for license plate checks of the protestors' vehicles. (*See id.* ¶¶ 32, 43). Some of the protesters chose to leave the scene in an Uber. (*See id.* ¶ 35). This encounter lasted approximately 90 minutes; Defendants prevented certain Plaintiffs' vehicles from leaving the scene by both blocking them in with their cars and circling them with their cars in the parking lot. (*See id.* ¶¶ 30–32, 34, 37, 41–42, 48).

***This Action.*** Plaintiffs' Amended Complaint contains three claims for declaratory relief: a claim for violation of Plaintiffs' First Amendment rights to free speech against Rivadeneira and Sanchez ("Count I"); a First Amendment retaliation claim against all Defendants ("Count II"); and a claim for violation of Plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure against all Defendants ("Count III"). (*See id.* 10–12).[2] All claims are brought under 42 U.S.C. section 1983 against Defendants in their individual and official capacities pursuant to 28 U.S.C. sections 2201 and 2202 and Federal Rule of Civil Procedure 65. (*See id.* 1–2).

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Defendants move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1), arguing the Court lacks subject matter jurisdiction; and Rule 12(b)(6), contending Plaintiffs fail to state claims for relief.[3]  (*See* Mot. 6–18, 19–20).

## II.     LEGAL STANDARDS

*Rule 12(b)(1).*  Subject-matter jurisdiction must be established before a case can proceed on the merits.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998).  This is because "[f]ederal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994) (alteration added).  It is presumed that a federal court lacks jurisdiction in a case until the plaintiff demonstrates the court has jurisdiction over the subject matter.  *See id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182–83 (1936)).  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case[.]" *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (alterations added; citations omitted).  A defendant may challenge subject-matter jurisdiction facially or factually.  *See Douglas v. United States*, 814 F.3d 1268, 1274–75 (11th Cir. 2016).  A facial attack requires the court to examine the complaint, taking its allegations as true, to determine whether the plaintiff has sufficiently alleged a jurisdictional basis.  *See id.* at 1274.

To establish subject-matter jurisdiction, a plaintiff must allege he has standing, which consists of three elements: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203

---

[3] Defendants also raise insufficiency of service of process, under Rules 12(b)(4) and 12(b)(5), for the official capacity claims.  (*See* Mot. 18–19).  Because the Court finds that Plaintiffs fail to state official capacity claims under Rule 12(b)(6), the Court does not consider Defendants' arguments regarding service of process.

(2021) (citation omitted).  "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984)).

 ***Rule 12(b)(6).***  "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

 To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).  When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

### III.    DISCUSSION

**A.    Subject-Matter Jurisdiction**

All of Plaintiffs' claims are asserted under Federal Rule of Civil Procedure 65 and 28 U.S.C. section 2201.  Plaintiffs seek a declaration — three declarations — regarding their First and Fourth Amendment rights as related to the events that took place on January 28, 2021.  (*See* Am. Compl. ¶¶ 52, 54–55, 57–58, 60).  Initially, the Court observes that Plaintiffs' reliance on Rule 65 is misplaced because that Rule addresses injunctions and restraining orders.  *See* Fed. R. Civ. P. 65.  As such, the Court construes Plaintiffs' claims to be seeking relief under Rule 57, which states that the Federal Rules "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. [section] 2201."  Fed. R. Civ. P. 57 (alteration added).

Defendants move to dismiss this declaratory judgment action, arguing that Plaintiffs fail to establish standing and thus the Court lacks jurisdiction under Article III of the U.S. Constitution.  (*See* Mot. 5–6).  Subject-matter jurisdiction under the federal Declaratory Judgment Act depends on the existence of an "actual controversy."  *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985) (quotation marks omitted); *Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890, 895 (11th Cir. 2013) (explaining the actual controversy requirement "is jurisdictional").  The actual controversy requirement, which is congruent with the "case or controversy" requirement of Article III of the Constitution, is evaluated "on a case-by-case basis."  *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (quotation marks and citation omitted); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." (alteration added; citation omitted)).

As discussed, standing requires that "[1] the plaintiff must have suffered an 'injury in fact' . . . [;]  [2] there must be a causal connection between the injury and the conduct complained of . .

. [;] and [3] it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations added; citations and footnote call number omitted).  For a justiciable controversy to exist, there must be a substantial, "definite and concrete" dispute "touching the legal relations of parties having adverse legal interests." *MedImmune, Inc.*, 549 U.S. at 127 (quotation marks and citation omitted).  The controversy cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory*, 756 F.2d at 1552 (citations omitted).

Defendants do not argue a lack of causation here, and the Court finds the alleged injury to be "fairly traceable" to Defendants' acts.  *Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*, 773 F.3d 243, 247 (11th Cir. 2014) (quotation marks omitted; quoting *Lujan*, 504 U.S. at 560).  The Court turns to the requirements for injury and redressability below.

### 1.  *Injury in Fact*

Plaintiffs must allege "an injury sufficient to satisfy Article III's standing requirements," and the Court will "not speculate concerning the existence of standing, nor . . . imagine or piece together an injury sufficient to give [P]laintiff[s] standing when [they] ha[ve] demonstrated none." *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000) (alterations added; citation omitted).  The Court must determine "whether Plaintiffs' claimed future injury is imminent and concrete enough for judicial consideration."  *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006).

Plaintiffs allege three purported injuries.  First, they allege their First Amendment rights were violated when Defendants asked them to disperse during the protest at the Tarrio residence. (*See* Am. Compl. ¶ 53).  Second, they state Defendants retaliated against them, in violation of the First Amendment, during the encounter at Wendy's "in an effort to chill" any future protests.  (*Id.*

¶ 56).   Third, they allege their Fourth Amendment rights were violated when Defendants purportedly prevented them from leaving — without probable cause of a crime — during the encounter at Wendy's.  (*See id.* ¶ 59).

Because Plaintiffs request declaratory relief, they must demonstrate "a real and immediate threat of future harm."  *Elend*, 471 F.3d at 1207 (collecting cases).  As to Counts I and II, the First Amendment violations, Plaintiffs allege they "would have continued" to protest that day had Defendants not threatened arrest and that they "intend to continue their protest of Tarrio at his last known address for the remainder of this week and fear that doing so will result in further retaliation."  (Am. Compl. ¶¶ 25, 39).  Whether Plaintiffs would have continued to protest that day is of no consequence given that "an injury in the past does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment.  A declaration regarding a past injury is nothing more than a gratuitous comment without any force or effect."  *Sully v. Scottsdale Ins. Co.*, No. 21-cv-60299, 2021 WL 1289618, at *2 (S.D. Fla. Apr. 7, 2021) (alterations adopted; citations and quotation marks omitted).

Plaintiffs also cannot establish injury in fact based on their intention to continue to protest "this week[.]"  (Am. Compl. ¶ 39 (alteration added)).  In the Eleventh Circuit, relief for "prospective conduct" of this nature requires a minimum threshold of detail such as the "time, location, audience, and the nature of the protest activity[.]"  *Elend*, 471 F.3d at 1202 (alteration added).  While Plaintiffs attempt to provide additional detail in their Response by asserting they "intend to protest again at Tarrio's house within one week of receiving a declaratory judgment" (Resp. 17), a complaint may not be amended by briefs in opposition to a motion to dismiss.  *See Huls v. Llabona*, 437 F. App'x 830, 832 n. 5 (11th Cir. 2011) (holding that an argument raised for the first time in response to a defendant's motion to dismiss, instead of in an amended complaint,

was not properly raised before the district court and would not be considered on appeal); *Brown v. J.P. Turner & Co.*, No. 1:09-CV-2649, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) (attempting to bolster a claim with a new argument "made for first the time [sic] in response to a motion to dismiss, is plainly inappropriate" (citation omitted)); *Walker v. City of Orlando*, No. 6:07-cv-651, 2007 WL 1839431, at *5 (M.D. Fla. June 26, 2007) (limiting "its consideration to the allegations of the complaint[,]" where the response "attempt[ed] to introduce new allegations not contained in the [c]omplaint" (alterations added; citation omitted)).

Even assuming this amendment is appropriate *and* adequate to provide the level of detail necessary under *Elend* to indicate Plaintiffs' intent to protest again, Plaintiffs still fail to demonstrate an "immediate threat of future harm" as required.  *Elend*, 471 F.3d at 1207 (collecting cases).  First, Plaintiffs do not allege they have actually protested again, nor "[o]ther than the one instance in" January 2021, "even given a description of Plaintiffs' past conduct from which to infer that they might act in a similar manner in the future."  *Id.* at 1209 (alteration added; citation omitted).  Second, Plaintiffs do not allege "with particularity that a future injury would likely occur in substantially the same manner as the previous injury."  *Id.* at 1208.  Even if Plaintiffs were to protest again at the Tarrio residence and the police were once more called, there is no allegation that there would be a similar response and that *Defendants* would be the responding officers.  *Cf. Lacroix v. Lee Cnty., Fla.*, No. 2:18-cv-143, 2018 WL 3536173, at *4 (M.D. Fla. July 23, 2018), *aff'd*, 819 F. App'x 839 (11th Cir. 2020) (finding future injury unlikely where plaintiff provided "no detail as to why [the named officer defendant] would enforce the Trespass Policy as opposed to any other [] officer" (alterations added)).

"Whether a future injury is likely to occur in part depends on whether the misconduct alleged is authorized by or part of a government policy."  *J W ex rel. Tammy Williams v.*

*Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003)).  It is "significantly more likely" that an injury will be repeated when it is "authorized or part of a policy," but "if future injury is based on the occurrence of a random or unauthorized act, then the injury is 'too speculative' for standing purposes." *Id.* (quoting *31 Foster Children*, 329 F.3d at 1266).  Here, Plaintiffs have not alleged that Defendants' conduct was authorized by any policy.  Thus, it is both unclear when Plaintiffs intend to protest again and, in the event they do, "entirely conjectural" that Defendants would arrive on the scene and respond similarly.  *Elend*, 471 F.3d at 1209.

The same is true for Count III, the Fourth Amendment violation claim.  Plaintiffs request a declaration "that continued seizures of their persons by blocking their vehicles in and preventing the Protesters from leaving any area without probable cause is a violation of their Fourth Amendment rights to be free from unreasonable search and seizures."  (Am. Compl. ¶ 60).[4] Plaintiffs do not demonstrate that they are faced with any immediate threat of injury, as required to satisfy the injury in fact requirement of standing.  "Immediacy requires that the anticipated injury occur within some fixed period of time in the future."  *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1233 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 900 (2020) (citing *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008)).  "When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury." *Id.* (quotation marks omitted; quoting *31 Foster Children*, 329 F.3d at 1265).  "And even if the plaintiff shows immediacy, the injury must still be substantially likely to actually occur, meaning that the threatened future injury must pose

_____

[4] Although the Court does not determine the merits of Plaintiffs' Fourth Amendment claim, the Court notes that Plaintiffs allege some of the protestors chose to leave the Wendy's without Defendants attempting to prevent their departure.  (*See* Am. Compl. ¶¶ 35–36).

a realistic danger and cannot be merely hypothetical or conjectural." *Id.* (citations omitted). As noted, it is unclear whether Plaintiffs will protest at the Tarrio residence again; Defendants will respond; and, if Defendants respond, that it will be in a similar manner as before. Assuming all those variables occur, it is pure conjecture that Plaintiffs will again drive to Wendy's or some other comparable location, be followed by Defendants, and be prevented from leaving by Defendants.[5]

### 2. *Redressability*

Redressability asks the question "whether a decision in a plaintiff's favor would significantly increase the likelihood that she would obtain relief that directly redresses the injury that she claims to have suffered." *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1301 (11th Cir. 2019) (alterations adopted; quotation marks omitted; quoting *Harrell v. Fla. Bar*, 608 F.3d 1241, 1260 n.7 (11th Cir. 2010)). "Standing, moreover, concerns the congruence or fit between the plaintiff and the defendants. 'In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' *between himself and the defendant[s]* within the meaning of Art[icle] III.'" *Scott v. Taylor*, 405 F.3d 1251, 1259 (11th Cir. 2005) (Jordan, D.J., sitting by designation, concurring) (emphasis and alterations in original; quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Plaintiffs' claims concern past actions of the Defendants, and, as observed, there are no allegations to indicate that these same Defendants would be summoned; respond; and much less respond in a similar manner if Plaintiffs protested again. There is no alleged injury here which is likely to be redressed by a favorable decision in an action for a declaratory judgment.

---

[5] Defendants argue that the content of the video exhibits attached to the Amended Complaint undermines Plaintiffs' allegations that Defendants prevented them from leaving the Wendy's. (*See* Mot. 11–13). Because the Court has accepted as true the allegations of the Amended Complaint and still determined Defendants' requested relief should be granted, it is unnecessary at this juncture to order Plaintiffs to conventionally file the video exhibits.

Given the "overwhelming ambiguity" of both the alleged injuries and Plaintiffs' requested relief, a finding of jurisdiction here "would amount to an abdication of [the Court's] duty to only adjudicate actual cases or controversies." *Elend*, 471 F.3d at 1210 (alteration added). In short, Plaintiffs fail to establish standing to pursue the declaratory relief sought.

## B. Official Capacity Claims

When an official is sued under section 1983 in his official capacity, "the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Id.* (citations omitted). Plaintiffs are suing Defendants in their official capacities; thus, the governmental entity that employs Defendants, Miami-Dade County, is the real party in interest. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Counties can be held liable for violating a plaintiff's constitutional rights under section 1983. *See generally Monell*, 436 U.S. 658. The Supreme Court, however, "has placed strict limitations on municipal liability under [section] 1983." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (alteration added). To impose section 1983 municipal liability, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

A plaintiff has two methods by which to establish a county's policy: "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech*, 335 F.3d at 1329 (citations

omitted).  "Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting it and that the county's custom or practice is the moving force behind the constitutional violation."  *Id.* at 1330 (alteration added; other alteration adopted; quotation marks, citations, and footnote call number omitted); *see also DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1307 n.21 (11th Cir. 2019) (identifying ways a plaintiff may show a municipal liability's policy or custom).  Under either theory, a plaintiff must show the county "has authority and responsibility over the governmental function in issue and must also identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue."  *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 819 (11th Cir. 2017) (quotations marks and citation omitted).  Further, to demonstrate a custom or policy, it is generally necessary that a plaintiff "show a persistent and wide-spread practice[;] . . . [n]ormally random acts or isolated incidents are insufficient to establish a custom or policy."  *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) (alterations added; citation omitted).

Here, Plaintiffs fail to allege that the claimed constitutional violations resulted from any policy or custom, and they therefore fail to state plausible claims for municipal liability under section 1983.[6]  Accordingly, Plaintiffs' official capacity claims against Defendants must be dismissed.

---

[6] In their Response, Plaintiffs state that they "preserve[] all allegations against the officers in their official capacity in case discovery should reveal that these officers acted in a supervisory capacity."  (Resp. at 4 (alteration added)).  This statement does not cure the pleading deficiencies of the official capacity claims. *See Bryant v. Jones*, 575 F.3d 1281, 1299 (11th Cir. 2009) ("It is well established that liability in [section] 1983 cases cannot be premised solely upon a theory of respondeat superior." (alteration added; emphasis and citations omitted)).

CASE NO. 21-20499-CIV-ALTONAGA/Torres

## IV.     CONCLUSION

In accordance with the foregoing, it is

**ORDERED** and **ADJUDGED** as follows:

1.      Defendants' Motion to Dismiss Plaintiffs' Amended Complaint **[ECF No. 22]** is **GRANTED** as to the individual capacity claims in Counts I, II, and III, which are **DISMISSED** without prejudice for lack of subject matter jurisdiction.

2.      Defendants' Motion to Dismiss Plaintiffs' Amended Complaint **[ECF No. 22]** is **GRANTED** as to the official capacity claims in Counts I, II, and III, which are **DISMISSED** without prejudice for failure to state claims for relief.

3.      Plaintiffs are granted leave to amend to address the identified pleading deficiencies. Plaintiffs have until **September 8, 2021** to file a second amended complaint. Because the deadline to file amended pleadings was August 24, 2021 (*see* Sched. Order [ECF No. 27] 1), no further amendments will be permitted.

**DONE AND ORDERED** in Miami, Florida, this 31st day of August, 2021.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record